A95A2241. GREEN v. THE STATE.
(467 SE2d 203)

BEASLEY, Chief Judge.

Green was convicted of armed robbery (OCGA § 16-8-41) and possession of a firearm during the commission of a crime (OCGA § 16-11-106). Green's motion for a new trial was denied and he appeals.

We view the evidence in a light most favorable to the verdict. *Pardo v. State*, 215 Ga. App. 317 (1) (450 SE2d 440) (1994). Green went to the Southern Motors car dealership in Savannah and expressed interest in a 1991 Honda Accord. Bremer, a sales associate, spoke to Green a few moments until sales associate Silverstein could actually assist Green. At Green's request, Silverstein agreed to accompany him for a test drive, even though the dealership was to close in

20 minutes. It was still daylight. The two struck up a conversation during the drive, primarily focused on their military service in the Persian Gulf conflict. Silverstein became suspicious when Green was evasive in answering certain questions about his family and experiences in the military. He began to look for distinguishing marks on Green and noticed a prominent footprint-shaped scar or birthmark on Green's arm.

Green drove the car into an apartment complex, indicating to Silverstein that he wanted to show the car to a friend. Instead, he pulled a pistol out of his groin area, pointed it at Silverstein, and instructed him to get out of the car. Silverstein exited the car and Green drove away.

Several months after the incident, a state trooper with the Florida Highway Patrol responded to a "vehicle in a ditch" call and found a 1991 Honda Accord with Green admitting to be the driver. Green produced an expired insurance card with the name "Thomas Green" (the former owner of the car) as his only identification. The trooper initiated a computer check and determined the vehicle was the Honda Accord stolen from the dealership in Savannah.

1. Green asserts that the verdict was contrary to the evidence and the law and against the weight of the evidence. The weight of the evidence is addressed to the trial court alone. *Stinson v. State*, 185 Ga. App. 543, 544 (364 SE2d 910) (1988). As Green recognizes, this Court is concerned only with the legal sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). So viewed, there was ample evidence from which a rational trier of fact could determine Green's guilt beyond a reasonable doubt of the offenses charged. This enumeration of error is without merit. *Grant v. State*, 195 Ga. App. 463 (393 SE2d 737) (1990). The fact that Silverstein first reported that the scar was on the robber's right arm and later said he was mistaken and that it was on the left arm created a conflict for the jury to resolve but did not undermine the verdict. The witness explained the original error as being attributable to his "mild shock" or "hysteria" right after the incident.

2. Green enumerates error in permitting the State to show to the jury, and admitting into evidence, a photograph. Green objected when the State attempted to display a photograph of an arm depicting a footprint-shaped scar on the ground that it had not been admitted into evidence and that it was without foundation in that the State had failed to prove that it was in fact a photograph of Green's arm. The court admitted it, subject to the State offering proof that it was Green's arm, that is to say, "linking up the evidence." The State provided this proof through the testimony of Sergeant Delo, the Savannah policeman who investigated the theft and who took the close-up

picture of the arm and the photograph of Green's entire body, which also showed the mark on Green's arm.

The rules for admission of a photograph at trial were outlined in *Scott v. State*, 206 Ga. App. 23 (424 SE2d 328) (1992): "'A photograph is authenticated by showing it is a fair and accurate representation of the scene depicted. (Cit.) Any witness who is familiar with the scene depicted can authenticate the photograph; it is not necessary that the witness be the photographer or even that the witness have been present when the photograph was taken.' *Isaacs v. State*, 259 Ga. 717, 732 (26) (386 SE2d 316)." Although neither Silverstein nor Delo testified exactly that the photograph was "a fair and accurate representation of the scene depicted," an adequate foundation was established through similar testimony. *Scott*, supra at 25. As in *Scott*, "[w]e find this testimony at least substantially complies with the foundation requirement of *Isaacs*, supra, and that the trial court did not abuse its discretion in admitting this photograph in evidence." Id.

3. On cross-examination, Green's counsel questioned Sergeant Delo about the sequence of events relating to Delo showing Silverstein the photograph of Green's arm. Delo responded, "The photographs of those arms were shown to [Silverstein] on October 28th . . . [T]hat's when I interviewed [Green] and that's when I was able to get a photograph of the scar. At the time of the [initial] interview with Silverstein, which was September 1, [Green] was still in jail in Florida."

Green contends Delo's statement revealing that Green was in jail in Florida impermissibly placed his character in evidence. Due to his arrest for theft of the Honda, Green was temporarily jailed in Florida. This had already been placed in evidence, without objection, by the testimony of the Florida state trooper. Moreover, " 'evidence that an accused has been confined in jail in connection with the case at issue does not place his character in evidence.' " (Citations omitted.) *Ferrell v. State*, 198 Ga. App. 270, 272 (3) (401 SE2d 301) (1991).

4. Green urges error in the admission of the photographic lineup because it was impermissibly suggestive in that he is a heavy-set man and some of the men pictured were not heavy-set, citing *Baier v. State*, 124 Ga. App. 334 (183 SE2d 622) (1971). *Baier* and U. S. Supreme Court cases upon which it depends hold "that the Sixth Amendment guarantee covers the right to counsel at a critical pre-trial confrontation where the results might well determine the fate of an accused and where the absence of counsel might derogate from his right to fair trial, and that courtroom identification by a witness to whom the accused was exhibited in the absence of counsel before trial must be excluded unless it can be established that the evidence had an independent origin or that the error in admitting the identification

was harmless." Id. at 336.

Green has presented no authority that a failure to match exact physical sizes requires reversal. Instead, the test "is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *McCoy v. State*, 190 Ga. App. 258, 260 (378 SE2d 888) (1989). In *Baier,* the court found the photographic lineup impermissibly suggestive because it consisted of only three pictures, two of which were of the defendant. In contrast, this lineup consisted of pictures of different men with substantially similar features. The six-photo spread in this instance was also sufficiently large not to lead a viewer into a potential choice. Its admission was not in error.

Secondly, the in-court identification following a selection from the spread was not impermissible. In addition to the spread not being suggestive, other factors affected the witnesses' identifications, i.e., opportunity to view the criminal during the commission of the crime, witness's degree of attention, prior descriptions, level of certainty, and the time between the crime and the identification. *Smith v. State*, 209 Ga. App. 540, 543 (433 SE2d 694) (1993). The State introduced the lineup into evidence through the testimony of sales associate Bremer. Both Silverstein and Bremer had picked Green out of the photographic lineup and identified him at trial. Both had given prior descriptions that fit Green. Silverstein had been intent on memorizing distinguishing marks and features while taking the test drive. Bremer testified that he clearly remembered what Green looked like, because he always looked into customers' faces when speaking with them. Accordingly, the witnesses' in-court identifications were in no way tainted.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JANUARY 19, 1996.

*Willie T. Yancey, Jr.,* for appellant.

*Spencer Lawton, Jr., District Attorney, Lori E. Tepper, Assistant District Attorney*, for appellee.